**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HOYT CRACE,
　　　　　　*Petitioner-Appellee*,

　　　　v.

ROBERT HERZOG,
　　　　　　*Respondent-Appellant*.

No. 13-35650

D.C. No.
3:12-cv-05672-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
October 7, 2014—Seattle, Washington

Filed August 14, 2015

Before: Richard A. Paez, Jay S. Bybee,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Bybee;
Dissent by Judge Callahan

# SUMMARY[*]

## Habeas Corpus

The panel affirmed the district court's judgment granting a habeas corpus petition brought by a Washington state prisoner who was convicted by a jury of two misdemeanor offenses and one count of attempted second degree assault, a felony, and received a life sentence without the possibility of parole under Washington's three-strikes law.

Petitioner claimed that his trial counsel was deficient for failing to request a jury instruction on "unlawful display of a weapon," a lesser included offense of second degree assault, because, had he been convicted of unlawful display of a weapon, rather than attempted second degree assault, he would have avoided a third strike.

Agreeing with the Third Circuit, the panel held that the Washington Supreme Court's rejection of petitioner's claim under *Strickland v. Washington* was an unreasonable application of clearly established federal law under the Anti-Terrorism and Effective Death Penalty Act. The panel held that, in determining whether there was a reasonable probability that the outcome of the proceeding would have been different if counsel had performed adequately, *Strickland*'s prejudice prong required an assessment of the likelihood that petitioner's jury would have convicted only on the lesser included offense, rather than an assessment of whether sufficient evidence supported the jury's verdict.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

On de novo review, the panel concluded that petitioner's claim of ineffective assistance of counsel warranted relief. The panel concluded that it was reasonably probable that, if given an additional option, the jury would have convicted the petitioner only of unlawful display of a weapon. The panel also concluded that counsel's failure to request the lesser included offense instruction constituted deficient performance under *Strickland*.

Dissenting, Judge Callahan wrote that the Washington Supreme Court's decision was not contrary to or an unreasonable application of clearly established federal law, and so AEDPA compelled deference to the state court. Accordingly, she would reverse the district court's grant of habeas relief.

---

**COUNSEL**

Robert W. Ferguson, Attorney General, Paul D. Weisser (argued), Senior Counsel, Attorney General's Office, Corrections Division, Olympia, Washington, for Respondent-Appellant.

Jeffrey Erwin Ellis (argued), Law Offices of Alsept & Ellis, Portland, Oregon, for Petitioner-Appellee.

**OPINION**

BYBEE, Circuit Judge:

In 2004, a Washington jury convicted Hoyt Crace of two misdemeanor offenses and one count of attempted second-degree assault—a felony—stemming from an incident in which he brandished a sword at a police officer. The attempted assault conviction constituted Crace's third strike under Washington's three-strikes law, and he received a life sentence without the possibility of parole.

After Crace's conviction became final, he brought a claim for postconviction relief under *Strickland v. Washington*, 466 U.S. 668 (1984), arguing that his trial counsel was deficient for failing to request a jury instruction on "unlawful display of a weapon," a lesser included offense of second degree assault. Had Crace been convicted of unlawful display of a weapon, rather than attempted second-degree assault, he would have avoided a third strike.

The Washington Supreme Court rejected Crace's *Strickland* claim. The court held that, because Crace's jury had found him guilty beyond a reasonable doubt of attempted second-degree assault, *Strickland* required a reviewing court to presume that the jury would have reached the same verdict even if instructed on a lesser offense. In light of that presumption, the court concluded that defense counsel's failure to request a lesser-included-offense instruction caused no prejudice to Crace.

We hold that the Washington Supreme Court's decision was an unreasonable application of clearly established federal law under AEDPA and, on *de novo* review, we conclude that

Crace's claim of ineffective assistance of counsel warrants relief. We therefore affirm the district court's judgment granting Crace's petition for a writ of habeas corpus.

I

Hoyt Crace spent the morning of August 16, 2003, doing repairs to the windows of a mobile home owned by an acquaintance of his in Tacoma, Washington.[1] Crace was living in this trailer while its owner was away. Sometime around ten in the morning, a neighbor who lived in the same trailer park came by and asked Crace if he ever "g[o]t high"; Crace, who has a history of drug use, responded that he did. The two began drinking together and, over the next several hours, Crace consumed eight to ten alcoholic coolers, roughly a gram of cocaine, two painkillers, and a "quarter piece" of heroin. Around one or two in the afternoon, the neighbor departed. Crace lay down to watch a video and soon fell asleep.

Crace awoke around 2:00 a.m. in a panicked state. He was "hearing voices and seeing things" and felt that someone or something was "going to brutally murder" him and that he needed to escape. He left the trailer where he was staying in an attempt to locate the trailer of two women whom he knew, where he hoped to find "safe haven" from his pursuers.

Crace mistakenly entered the trailer of a neighbor, Rita Whitten. After screaming and then rifling through Whitten's

---

[1] We take this narrative from the various witnesses, including Crace, who testified at trial. Our account derives from the testimony offered that the jury might have credited. We do not adopt any particular theory of what, in fact, occurred.

kitchen cabinets, he ran back outside. Crace eventually made his way back to the trailer where he was staying; he went inside, grabbed a sword off of the wall, and began running down the street, screaming for help.

Theron Hardesty, a Pierce County sheriff's deputy, arrived at the trailer park around 2:30 a.m. after receiving a call regarding a potential burglary. A resident informed Hardesty that a man armed with a sword was at large in the trailer park. Hardesty quickly located Crace, who was jumping up and down in the middle of the street and screaming.

Crace saw Hardesty's flashlight beam and, although he could not tell who was holding the flashlight, began running towards it, "trying to find somebody to be around" for protection. As Crace approached, Hardesty drew his handgun and ordered Crace to drop the sword. Crace did not comply immediately, but when he got within about 50 feet away from Hardesty, he realized Hardesty was a police officer and dropped the sword.

Hardesty then ordered Crace to get down on the ground. Crace continued to run toward Hardesty, however, because he feared that if he were to lie down in the middle of the street, he would be killed. Crace ran until he was about seven feet from Hardesty, at which point he complied with Hardesty's orders and got down on the ground.

Hardesty put Crace in handcuffs, placed him in the back of his patrol car, and went to interview Rita Whitten. During the interview, Hardesty heard bystanders "screaming" in the parking lot, and he returned to find that Crace had kicked out the left rear window of the car. Crace was terrified at having

been left alone and had kicked out the window in a desperate attempt to get Hardesty to return. Several additional deputies arrived soon afterwards and helped restrain Crace. Hardesty read Crace his *Miranda* rights, and Crace told him that he had been chased by "four or five" pursuers. Hardesty determined that Crace was "obviously on some type of street drug."

Crace was subsequently charged with first-degree criminal trespass, second-degree malicious mischief, and second-degree assault. The trial court ordered an evaluation of Crace's competency to stand trial, and two psychologists—one employed by the state and one by the defense—examined Crace. The court found Crace competent, and the case proceeded to trial. Crace's theory of defense at trial was that he suffered from diminished capacity on the night of August 16 due to the influence of the alcohol and drugs he had consumed, leaving him unable to form the intent required for any of the charged offenses.

After the close of the evidence, the trial court instructed the jury on the three charged offenses and on attempted second-degree assault, a lesser included offense of second-degree assault. The jury deadlocked on the second-degree assault charge, but it convicted Crace of attempted second-degree assault. It also convicted on first-degree criminal trespass and second-degree malicious mischief. The latter two offenses are misdemeanors, but the attempted second-degree assault conviction—a felony—counted as Crace's third strike under Washington's three-strikes law. Crace received a life sentence without the possibility of parole for that offense.

After the Washington courts affirmed his conviction on direct appeal, Crace filed a "personal restraint petition" with

the Washington Court of Appeals, alleging, among other things, that his trial attorney was ineffective for failing to request a jury instruction on "unlawful display of a weapon," which is another lesser included offense of second-degree assault.[2] A conviction for unlawful display of a weapon, which is a misdemeanor, would not have resulted in Crace's receiving a third strike.

The Court of Appeals initially denied Crace's personal restraint petition in an unpublished opinion. Crace moved for reconsideration, and the court, in a divided opinion, granted that motion and subsequently issued a new decision granting Crace's petition. *In re Crace*, 236 P.3d 914 (Wash. Ct. App. 2010), *rev'd*, 280 P.3d 1102 (Wash. 2012). The court applied *Strickland*'s test for ineffective assistance of counsel and held that Crace had satisfied both prongs of that test. First, the court held that Crace's trial counsel had performed deficiently by failing to request an instruction on unlawful display of a weapon, given that a conviction for that offense rather than for attempted assault would have saved Crace from a third strike and a life sentence. *Id.* at 930–31. Second, it held that Crace had shown that he was prejudiced by his counsel's failure because, under Washington law, Crace would have been entitled to an instruction on the offense of unlawful display of a weapon if his attorney had requested it, and there was a reasonable probability that the

---

[2] A person commits the offense of unlawful display of a weapon by "carry[ing]" or "display[ing] . . . any firearm, dagger, *sword*, knife or other . . . weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons." Wash. Rev. Code § 9.41.270(1) (emphasis added).

outcome of the trial would have been different if that additional instruction had been given. *Id.* at 931–33.

The state appealed, and the Washington Supreme Court reversed by a vote of 7–2. *In re Crace*, 280 P.3d at 1102. The high court did not decide whether Crace's attorney's performance was deficient because it determined that Crace could not satisfy *Strickland*'s prejudice prong. The court explained that, when reviewing a claim of ineffective assistance of counsel, it was required to "assume that the jury would not have convicted the defendant unless the State had met its burden of proof" and that "the availability of a compromise verdict [thus] would not have changed the outcome of the trial." *Id.* at 1109. The court determined that, "in light of" these presumptions and of the fact that there was sufficient evidence to support the jury's verdict, it could not "say in all reasonable probability that counsel's error . . . contributed to Crace's conviction on attempted second degree assault." *Id.*

Crace next filed a habeas corpus petition in the Western District of Washington. A magistrate judge of that court recommended granting Crace's petition. The magistrate judge agreed with the Washington Court of Appeals' conclusion that Crace's attorney's performance had been deficient. Turning to the issue of prejudice, she explained that the Washington Supreme Court's prejudice analysis involved an "incomplete and unreasonable application of *Strickland.*" She explained that the Washington Supreme Court had "completely avoided the [prejudice] prong of *Strickland*"; rather than analyzing "what difference an instruction on the lesser crime of unlawful display of a weapon would have had on the outcome of" the trial, the Washington Supreme Court had simply assumed that such an

instruction would have made no difference. The magistrate judge noted that, under such an approach, "no defendant could ever show prejudice when counsel failed to offer a lesser included offense instruction," as long as sufficient evidence supported the jury's verdict. On *de novo* review, she concluded that Crace had shown that he was prejudiced by his attorney's failure and recommended granting relief.

In a separate opinion resting on the same reasoning, the district court adopted the magistrate judge's Report and Recommendation and granted Crace's habeas corpus petition. This appeal followed.

II

We review the district court's order granting a writ of habeas corpus *de novo*. *Merolillo v. Yates*, 663 F.3d 444, 453 (9th Cir. 2011). Our review of the Washington Supreme Court's decision, however, is constrained by AEDPA; we must defer to that decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). If we determine that "the requirements of AEDPA have been met, we must also determine, applying a de novo review standard, [that] there has been a constitutional violation" before we may grant habeas corpus relief. *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008).

III

The "clearly established" Supreme Court law at issue in this case is *Strickland v. Washington*, in which the Court held that a claim of ineffective assistance of counsel has "two

components": First, a defendant must show that his attorney's performance was "deficient," in that it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Second, he must show that he was prejudiced by his attorney's actions or omissions, by demonstrating that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

We analyze the question of prejudice first, since it is the only prong of *Strickland* that the Washington Supreme Court addressed.

## A. *AEDPA Review of the Washington Supreme Court's Prejudice Determination*

The Washington Supreme Court's conclusion that Crace's attorney's failure to request an instruction on unlawful display of a weapon did not prejudice Crace was based on the court's holding in an earlier case, *State v. Grier*, 246 P.3d 1260 (Wash. 2011). In *Grier*, a defendant convicted of second-degree murder argued on appeal that her trial counsel had been ineffective by failing to request a jury instruction on the lesser included offense of manslaughter. *Id.* at 1266. The court rejected this claim on the grounds that the defendant could not show any prejudice caused by her attorney's failure. *Id.* at 1274.

The *Grier* court quoted *Strickland* for the proposition that, when analyzing prejudice, a reviewing court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 1272 (quoting *Strickland*, 466 U.S. at 694). The court interpreted this language to mean that it

was required to presume that the defendant's jury had convicted her of murder because the jury found that the elements of murder had been proved beyond a reasonable doubt. The court then concluded that, given that presumption, it could also assume that "the availability of a compromise verdict would not have changed the outcome" of the trial, *id.* at 1274; if the jury had thought the defendant guilty of murder beyond a reasonable doubt, it necessarily would have reached the same verdict even if it had been instructed on lesser included offenses.

In Crace's case, the Washington Supreme Court applied both of the presumptions "recognized in *Grier*." It first presumed that Crace's jury must have found that each of the elements of attempted second-degree assault had been proved beyond a reasonable doubt when it convicted him. It then determined that the evidence was sufficient to support such a verdict and presumed, on that basis, that an instruction on the lesser included offense of unlawful display of a weapon would have made no difference to the outcome of the trial; the jury would still have convicted Crace of attempted second-degree assault even if it had been instructed on another lesser included offense.

The Washington Supreme Court's methodology is a patently unreasonable application of *Strickland*, and its decision in this case is thus unworthy of deference under AEDPA. *Strickland* did instruct reviewing courts to presume that trial juries act "according to law," but the Washington Supreme Court (both in *Grier* and in this case) has read far more into that instruction than it fairly supports and, as a result, has sanctioned an approach to *Strickland* that sidesteps the reasonable-probability analysis that *Strickland*'s prejudice prong explicitly requires.

In counseling reviewing courts to presume that juries act according to law, the *Strickland* Court sought to prohibit lower courts from basing findings of prejudice on the possibility of freak acts of "lawless[ness]" by judges and juries that are outside the ordinary course of criminal justice. The passage immediately following the language quoted in *Grier* explains this point:

> An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed.

466 U.S. at 695. In other words, a court may not find *Strickland* prejudice by concluding that a different choice of tactics by defense counsel could have persuaded the judge or jury to make an arbitrary and improper decision in the defendant's favor. Rather, "[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.*

The Washington Supreme Court's decisions in *Grier* and in this case overextended the foregoing principle. That principle forbids a reviewing court from finding prejudice by speculating that, if the defendant is permitted to roll the dice again, the jury might convict on a lesser included offense merely as a means of jury nullification, without regard for whether that verdict is consistent with the evidence. But it does not require a court to presume—as the Washington Supreme Court did—that, because a jury convicted the

defendant of a particular offense at trial, the jury could not have convicted the defendant on a lesser included offense based upon evidence that was consistent with the elements of both. To think that a jury, if presented with the option, might have convicted on a lesser included offense is not to suggest that the jury would have ignored its instructions. On the contrary, it would be perfectly consistent with those instructions for the jury to conclude that the evidence presented was a better fit for the lesser included offense. The Washington Supreme Court thus was wrong to assume that, because there was sufficient evidence to support the original verdict, the jury *necessarily* would have reached the same verdict even if instructed on an additional lesser included offense.

As the Supreme Court has recognized in a related context, a jury presented with only two options—convicting on a single charged offense or acquitting the defendant altogether—"is likely to resolve its doubts in favor of conviction" even if it has reservations about one of the elements of the charged offense, on the thinking that "the defendant is plainly guilty of some offense." *Keeble v. United States*, 412 U.S. 205, 212–13 (1973) (construing the Major Crimes Act of 1885 not to preclude lesser-included-offense instructions, in order to avoid constitutional concerns); *see also Hopper v. Evans*, 456 U.S. 605, 611 (1982). It is therefore perfectly plausible that a jury that convicted on a particular offense at trial did so despite doubts about the proof of that offense—doubts that, with "the availability of a third option," could have led it to convict on a lesser included offense. *See Keeble*, 412 U.S. at 213. Making this observation does not require us to speculate that the jury would have acted "lawless[ly]" if instructed on an additional, lesser included offense or to question the validity

of the actual verdict. Rather, it merely involves acknowledging that the jury could "rationally" have found conviction on a lesser included offense to be the verdict best supported by the evidence. *See id.*

In *Grier* (and, implicitly, in this case), the Washington Supreme Court brushed *Keeble* aside as "inapposite in the context of ineffective assistance of counsel." *Grier*, 246 P.3d at 1272. In that court's view, applying *Keeble*'s reasoning in a *Strickland* case requires a court to posit that "the jury would not hold the State to its burden in the absence of a lesser included offense instruction"—the kind of jury "lawless[ness]" that *Strickland* precludes a court from considering. *Id.* Not so. *Keeble*'s logic does not rest on the proposition that juries deliberately and improperly choose to convict in the absence of reasonable doubt. What *Keeble* teaches us is that a lesser-included-offense instruction can affect a jury's *perception* of reasonable doubt: the same scrupulous and conscientious jury that convicts on a greater offense when that offense is the only one available could decide to convict on a lesser included offense if given more choices.[3]

---

[3] The dissent is thus mistaken in claiming that "there is some tension" between *Strickland* and *Keeble* and that fairminded jurists could reasonably "resolve[]" this tension "in favor of *Strickland*." Dissenting Op. at 31–35 (citing *Harrington v. Richter*, 562 U.S. 86, 103, 105 (2011)). Properly understood, *Strickland* and *Keeble* are entirely harmonious: *Strickland* requires courts to presume that juries follow the law, and *Keeble* acknowledges that a jury—even one following the law to the letter—might reach a different verdict when presented with additional options.

Our conviction on this point is not shaken by the dissent's observation that sixteen state-court judges, including the eight Washington judges who ruled against Crace at various stages below, have agreed with its view of

Nothing in *Strickland*, therefore, forbids courts from considering the possibility that a jury would have convicted on a lesser included offense if given the option to do so. Indeed, just the opposite is true: in ineffective-assistance cases involving a failure to request a lesser-included-offense instruction, *Strickland requires* a reviewing court to assess the likelihood that the defendant's jury would have convicted only on the lesser included offense. *Cf. Keeble*, 412 U.S. at 213 ("We cannot say that the availability of a third option . . . could not have resulted in a different verdict."). Only by performing that assessment can a court answer the question expressly posed by *Strickland*: whether there is a reasonable probability that, if the defendant's lawyer had performed adequately, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.[4]

---

*Strickland* and *Keeble*. *Id.* at 36 n.8. Although we do not impugn either the character or the abilities of those judges, their rulings do not automatically establish that "fairminded disagreement" on this question is possible. The assessment of whether a question admits of fairminded disagreement among jurists is not simply a matter of counting noses; after all, in every federal habeas corpus case, there must be at least a few state-court judges who have decided an issue adversely to the petitioner in order for the case to come before us. Rather, a federal habeas court must decide whether the applicable Supreme Court law leaves the issue raised by the petitioner open or resolves it conclusively. We hold that *Strickland* and *Keeble* demonstrate beyond doubt that the Washington Supreme Court's decision was wrong and that the requirements of AEDPA have therefore been met.

[4] Nothing we have said here affects a defense attorney's ability to make a strategic decision to forgo a lesser-included-offense instruction in order to force the jury into an "all-or-nothing" decision. The reasonableness of that decision would be examined under the performance prong of *Strickland*.

The Washington Supreme Court in essence converted *Strickland*'s prejudice inquiry into a sufficiency-of-the-evidence question—an entirely different inquiry separately prescribed by *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). This is so because, under the Washington Supreme Court's approach, a defendant can only show *Strickland* prejudice when the evidence is insufficient to support the jury's verdict—a circumstance in which the defendant does not need to rely on *Strickland* at all because *Jackson* already provides a basis for habeas relief. *See id.* (a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt"). And conversely, if the evidence is sufficient to support the verdict, there is *categorically* no *Strickland* error, according to the Washington Supreme Court's logic. By reducing the question to sufficiency of the evidence, the Washington Supreme Court has focused on the wrong question here—one that has nothing to do with *Strickland*.

In the only other reported court of appeals decision on this issue that we have found, the Third Circuit came to the same conclusion that we do. *Breakiron v. Horn*, 642 F.3d 126 (3d Cir. 2011). In that case, a defendant convicted of robbery raised an ineffective-assistance-of-counsel claim based on his attorney's failure to request an instruction on the lesser included offense of theft. *Id.* at 136. The Pennsylvania Supreme Court rejected that claim, reasoning that no prejudice occurred because sufficient evidence supported the jury's conviction on the robbery charge. *Id.* at 139. The Third Circuit held that this decision was an unreasonable application of *Strickland*, explaining that *Strickland* required a court to "weigh all the evidence of record . . . to determine whether there was a reasonable probability that the jury

would have convicted [the defendant] only of theft if it had been given that option. Merely noting that the evidence was sufficient to convict does not accomplish that task." *Id.* at 140.

So too here. By pronouncing as a matter of law that, as long as there is sufficient evidence to support the jury's verdict, no prejudice results from a defense attorney's failure to request a lesser-included-offense instruction, the Washington Supreme Court has licensed Washington courts to avoid analyzing prejudice in the way that *?Strickland* requires.[5] This approach to *Strickland* is not merely wrong, but "objectively unreasonable" under AEDPA.

B. De Novo *Prejudice Analysis*

Having determined that the Washington Supreme Court's decision on prejudice should receive no AEDPA deference, we consider the issue of prejudice *de novo*.

We note, first, that Crace was legally entitled to a lesser-included-offense instruction on unlawful display of a weapon. Under Washington law, "a defendant is entitled to an instruction on a lesser included offense if two conditions are met. First, each of the elements of the lesser offense must be a necessary element of the offense charged." *State v.*

---

[5] The dissent notes that the Washington court recited the proper *Strickland* test before applying it. Dissent at 38–39. But the court's application of the law—not its recitation of the legal standard—is what we hold to be objectively unreasonable. The dissent also argues that we should presume the state court did not err in applying clearly established law. *Id.* at 39–40. While we agree with this general proposition, a presumption cannot save the Washington court's patently unreasonable application of the law here.

*Workman*, 584 P.2d 382, 385 (Wash. 1978). Second, "the evidence must raise an inference that *only* the lesser included/inferior degree offense was committed to the exclusion of the charged offense." *State v. Fernandez-Medina*, 6 P.3d 1150, 1154 (Wash. 2000).

Both of these requirements are satisfied here. The Washington courts have held that every element of unlawful display of a weapon is a necessary element of second-degree assault. *State v. Ward*, 104 P.3d 670, 672 (Wash. App. 2004), *abrogated on other grounds by Grier*, 246 P.3d at 1271. And as the Washington Court of Appeals concluded, there was evidence to "support an inference that Crace only displayed the sword and that he had no intent to create reasonable fear or apprehension of bodily injury," which is the specific intent required for assault and attempted assault.

Crace testified that, when he grabbed his sword and ran out into the street, he had no intent to harm anyone, but simply was "scared" and "wanted people to come out." Crace's actions when Deputy Hardesty arrived on the scene did not clearly suggest that he intended to harm or frighten Hardesty, and Crace testified that he lacked such intent. Crace also presented testimony by a psychologist, Dr. Vincent Gollogly, who explained that Crace's mental capacity had been so impaired on the night of August 16 that he was not "able to realize the nature of what he was doing." Dr. Gollogly acknowledged that some of Crace's actions could be described as purposeful, but he explained that Crace's actions were not *intentional* because Crace had been in the throes of a "substance induced psychotic disorder" that affected his perceptions and prevented him from forming

criminal intent.**[6]** Hardesty's testimony that it was "obvious[]" that Crace was under the influence of drugs that night provided support for Dr. Gollogly's assessment.

Based on Dr. Gollogly's opinion and the testimony of Crace and Hardesty, a jury could rationally choose to convict Crace *only* of unlawful display of a weapon. Indeed, that offense appears to be tailor-made to apply to Crace's conduct as he and Dr. Gollogly described it. *See* Wash. Rev. Code § 9.41.270(1) (prohibiting "carry[ing] . . . any . . . *sword* . . . in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another *or* that warrants alarm for the safety of other persons" (emphasis added)).

Because both factors of the Washington test are satisfied, the trial court would have been obligated to instruct the jury on the lesser included offense of unlawful display of a weapon if Crace's counsel had requested such an instruction. And had that instruction been given, there is a reasonable probability that the jury would have convicted Crace only of that offense. As we have explained, the evidence could well have led Crace's jury to question whether he acted with the specific intent required for attempted second-degree assault—the only lesser included offense of second-degree assault on which the jury was instructed and the only felony

---

**[6]** Dr. Steven Marquez, the state's psychologist, took the opposite position, testifying that Crace showed an ability to engage in "goal-directed" behavior at the time of his arrest and that he believed that Crace was a malingerer whose account of his own mental state was not completely credible. This testimony, although in conflict with Dr. Gollogly's, does nothing to alter our conclusion that there is at least a reasonable *probability* that the jury would have convicted Crace only of unlawful display of a weapon.

of which Crace was convicted. *See* Wash. Rev. Code §§ 9A.28.020(1), 9A.36.021(1). At trial, however, the jury's only option short of convicting on attempted assault was to acquit Crace outright. The fact that the jury "resolve[d] its doubts in favor of conviction" on attempted assault, rather than in favor of acquittal, does not imply that it was firmly convinced of Crace's capacity to form criminal intent. *See Keeble*, 412 U.S. at 212–13.

We think it reasonably probable that, if given an additional option, the jury would have convicted Crace only of unlawful display of a weapon—which, unlike assault and attempted assault, has *no* intent requirement.[7] *See* Wash. Rev. Code § 9.41.270. This probability is "sufficient to undermine [our] confidence in the outcome" of the trial and satisfies the prejudice prong of *Strickland*. 466 U.S. at 694.[8]

---

[7] Contrary to the dissent's suggestion, Dissenting Op. at 44, our prejudice analysis does not depend in any way on the assumption that the jury knew about the sentencing consequences of the various possible verdicts. We refer to the sentencing consequences of the different charges only in connection with our conclusion that Crace's attorney—who, unlike the jury, either knew or should have known about the implications of the charges under Washington's three-strikes law—performed deficiently by failing to request an instruction on unlawful display of a weapon. *See* Part IV, *infra*.

[8] The dissent argues that *Schad v. Arizona*, 501 U.S. 624 (1991), compels a contrary conclusion. Dissenting Op. at 40–44. In *Schad*, the Supreme Court held that no due process violation occurred at a murder trial where the defendant's jury was instructed on both first- and second-degree murder but was not instructed on the lesser included offense of robbery. (The defendant was convicted of first-degree murder). *Schad*, 501 U.S. at 648. The Court explained that because the jury had been instructed on one lesser included offense—second-degree murder—it had not been presented with an all-or-nothing choice between conviction on first-degree murder and acquittal. Thus, the due process rule of *Beck v.*

IV

It remains for us to decide whether Crace's attorney's failure to request the lesser-included-offense instruction constituted deficient performance under *Strickland*. Because the Washington Supreme Court explicitly declined to reach this issue, we review it *de novo. See, e.g.*, *Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006). We conclude that Crace's attorney's performance was clearly deficient.

We are mindful that judicial review of an attorney's performance under *Strickland* must ordinarily be "highly deferential" and incorporate a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance which, under the circumstances, might be considered sound trial strategy." *United States v. Span*, 75 F.3d 1383, 1387 (9th Cir. 1996). A trial attorney's failure to request a jury instruction receives no deference, however,

---

*Alabama*, 447 U.S. 625 (1980), which requires that a jury in a capital case be instructed on a lesser included noncapital offense that is supported by the evidence, was inapplicable. *Schad*, 501 U.S. at 645–48.

We do not agree with the dissent that *Schad*—which simply held that, where one lesser included offense instruction has been given, a court need not take the drastic step of vacating a conviction under *Beck*—establishes that a conviction is per se "reliable" as long as one lesser included offense instruction was given. Moreover, even if the dissent is right that, under *Schad*'s logic, Crace's conviction is marginally more "reliable" because a lesser included instruction on attempted assault was given at his trial, Dissenting Op. at 42, there remains a reasonable probability that Crace's jury would have convicted him only of unlawful display of a weapon if instructed on that offense. That probability establishes that Crace was prejudiced by his attorney's failure to request such an instruction. *See Strickland*, 466 U.S. at 694.

when it is based on "a misunderstanding of the law" rather than "a strategic decision to for[]go one defense in favor of another." *See id.* at 1390; *accord Richards v. Quarterman*, 566 F.3d 553, 569 (5th Cir. 2009) (finding ineffective assistance of counsel based on failure to request lesser-included-offense instruction, where such failure was "deficient and not a strategic decision"); *United States v. Alferahin*, 433 F.3d 1148, 1161 (9th Cir. 2006) (holding that trial counsel was deficient, where he "did not intend strategically to for[]go [a] materiality instruction" but rather "had no idea that such an instruction was available to his client as a matter of right"); *United States ex rel. Barnard v. Lane*, 819 F.2d 798, 805 (7th Cir. 1987) (holding that failure to request an instruction on a lesser included offense constituted deficient performance, where such failure was not within the "spectrum of counsel's legitimate tactical choices").

Crace's attorney's failure to request the instruction was neither strategic nor deliberate. In a declaration submitted to the Washington Supreme Court, he explicitly stated that the "only reason [he] did not offer a lesser included instruction for unlawful display of a weapon was because [he] did not consider it." The Washington Supreme Court did not consider this declaration because it did not reach the performance prong of *Strickland*, but the declaration is properly before us and the state has made no attempt to dispute its assertions. We therefore conclude that Crace's counsel made no strategic decision to forgo a lesser included offense instruction that commands our deference, and we hold that his outright failure even to *consider* the possibility of requesting a lesser included offense constituted deficient performance.

Indeed, we would find that Crace's attorney's actions were manifestly unreasonable even if we thought that he had consciously chosen not to request the instruction. In certain circumstances, it may be reasonable for a defense attorney to opt for an "all-or-nothing" strategy, forcing the jury to choose between convicting on a severe offense and acquitting the defendant altogether. But once the trial court decided to instruct the jury on one lesser included offense—*i.e.*, attempted second-degree assault—there was no longer any conceivable reason for Crace's counsel not to request an instruction on a second lesser included offense. An all-or-nothing strategy was also clearly inappropriate in this case, given that a conviction only for unlawful display of a weapon would have spared Crace a third strike and thus decades of prison time.

We conclude that Crace's attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Because Crace has satisfied both prongs of *Strickland*, his conviction for attempted second-degree assault cannot stand.

V

We hold that the Washington Supreme Court's application of *Strickland* was objectively unreasonable, which removes its decision from the protection of AEDPA. We also conclude, on *de novo* review, that Crace's claim of ineffective assistance of counsel merits habeas corpus relief. We therefore affirm the judgment of the district court.

**AFFIRMED.**

CALLAHAN, Circuit Judge, dissenting:

The Washington Supreme Court had to decide what effect, if any, defense counsel's failure to request a jury instruction on a lesser included offense had on Crace's conviction for attempted assault. The Washington Supreme Court held that because sufficient evidence supported Crace's conviction for attempted assault, the presence of a second lesser included offense instruction would not have changed the outcome of his trial. My review of the applicable Supreme Court law and the conflicting decisions by other courts on this issue compels me to conclude that the Washington Supreme Court's decision was not contrary to or an unreasonable application of clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d)(1). Therefore, as AEDPA compels us to defer to the state court, I respectfully dissent.

# I

Robert Crace is a persistent offender in Washington. His rap sheet discloses a burglary in 1981, robbery in 1981, two counts of robbery in 1988, robbery in 1991, burglary and possession of stolen property in 1995, burglary in 1999, and attempting to elude a police officer in 2002. The robberies in 1988 and 1991 were violent crimes that constituted "strikes" under Washington's three strikes law.

It is against this backdrop that we consider the largely undisputed facts in this instant case: Crace was arrested again in 2003 after he consumed several legal and illegal drugs and ran toward a police officer with a drawn sword. He was charged with second degree assault, first degree criminal trespass, and second degree malicious mischief. At trial, the

jury was instructed on assault with a deadly weapon and its lesser included offense, attempted assault with a deadly weapon. That instruction read:

>       If you are not satisfied beyond a reasonable doubt that the defendant is guilty of Assault in the Second Degree, the defendant may be found guilty of any lesser crime, the commission of which is necessarily included in the crime charged, if the evidence is sufficient to establish the defendant's guilt of such lesser crime beyond a reasonable doubt.

>       The crime of Assault in the Second Degree necessarily includes the lesser crime of Attempted Assault in the Second Degree.

>       When a crime has been proven against a person and there exists a reasonable doubt as to which of two or more crimes that person is guilty, he or she shall be convicted only of the lowest crime.

The jury was also instructed as to first degree criminal trespass and second degree malicious mischief. The jury deadlocked on assault but convicted Crace of attempted assault with a deadly weapon. The jury also convicted Crace of first degree criminal trespass and second degree malicious mischief.

Trespass and malicious mischief are not felonies under Washington state law, but assault and attempted assault are. Thus, Crace's conviction for attempted assault resulted in a

third strike, and Crace was sentenced to life without the possibility of parole under Washington's three strikes law.[1] Crace filed a direct appeal, which was unsuccessful.[2]

Crace then filed a personal restraint petition in Washington State Court, asserting, among other things, that his counsel was ineffective for failing to request a second lesser included offense instruction for unlawful display of a weapon. *See* Wash. Rev. Code § 9.41.270. A conviction of unlawful display of a weapon would have been a gross misdemeanor and would not have constituted Crace's third strike. *Id.* In an unpublished decision dated January 20, 2010, the Washington Court of Appeals denied Crace's petition, reasoning that the evidence did not support a lesser included offense instruction. *In re Crace*, 154 Wash. App. 1016 (2010) (unpublished). However, on July 28, 2010, the

---

[1] In November 1993, Washington state voters approved Initiative 593, commonly referred to as the "three strikes law." The law requires trial courts to sentence "persistent offenders" to life imprisonment without possibility of parole. A "persistent offender" is defined as one convicted of three felonies considered a "most serious offense" under the Revised Code of Washington § 9.94A.570. Despite vigorous debate about the wisdom of three strikes laws, the law has been upheld against constitutional challenge. *See, e.g.*, *State v. Manussier*, 921 P.2d 473 (Wash. 1996) (en banc) (holding three strikes law is constitutional), *cert. denied*, 520 U.S. 1201 (1997); *State v. Thorne*, 921 P.2d 514 (Wash. 1996); *and State v. Rivers*, 921 P.2d 495 (Wash. 1996).

[2] On direct appeal, Crace challenged the sufficiency of the evidence of his attempted assault conviction. The Washington Court of Appeal upheld his conviction, reasoning that a jury could reasonably conclude that Crace intended to hurt the officer or to instill fear of harm in him. *State v. Crace*, 128 Wash. App. 1021 (2005) (unpublished). The court also noted that he had waived objections to the second and third definitions of assault. *Id.* at *6. Crace has not challenged these rulings in his habeas petitions.

Court of Appeals reversed itself, holding that Crace's counsel was deficient for failing to request an instruction for the lesser included offense of unlawful display of a weapon and that Crace was prejudiced by his counsel's failure. *In re Crace*, 236 P.3d 914, 932–33 (Wash. Ct. App. 2010). One judge dissented.

The Washington Supreme Court en banc reversed the Court of Appeals in another divided opinion. The court assumed, without holding, that the failure of Crace's counsel to request a lesser included offense instruction for unlawful display of a weapon was deficient, but held that Crace could not have been prejudiced. Because there was sufficient evidence to convict Crace of the greater offense, attempted assault, there was no reasonable probability that the outcome would have been different had the lesser included offense instruction had been given. Two judges dissented. *In re Crace*, 280 P.3d 1102, 1110 (Wash. 2012).

Crace then filed this habeas petition in federal district court. The district court granted relief, and the State[3] timely appealed.

## II

The majority errs by failing to defer to the Washington Supreme Court's decision under AEDPA. Title 28 U.S.C. § 2254(d)(1) prohibits a court from granting an application for a writ of habeas corpus unless the state court's "adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of,

---

[3] Respondent-Appellant is Robert Herzog, the Superintendent of the Monroe Correctional Complex in Monroe, Washington.

clearly established Federal law, as determined by the Supreme Court of the United States." The clearly established law in this case includes *Strickland v. Washington*, 466 U.S. 668 (1984), which sets forth the standard governing ineffective assistance of counsel claims in habeas proceedings. Under *Strickland*, a claim of ineffective assistance of counsel has two components. First, a defendant must show that his attorney's performance was "deficient," in that it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Second, he must show that he was prejudiced by his attorney's actions or omissions, by demonstrating that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, the Washington Supreme Court considered the second prong of *Strickland*: whether Crace's counsel's failure to request a jury instruction for a lesser included offense was prejudicial such that a "reasonable probability" existed that, if the instruction had been given, the result of the proceeding would have been different.

Notably, the question presented to the Washington Supreme Court differs from ineffective of assistance of counsel claims in which habeas petitioners allege that they have been prejudiced by their counsels' failure to present certain evidence. In those instances, the relevant question is how the factual findings would have been affected if defense counsel had introduced the additional evidence, considering the "totality of the evidence before the judge or jury." *Strickland*, 466 U.S. 695–96. But Crace's petition has nothing to do with the evidence presented in his case. He does not allege that he would have introduced any other evidence to support his innocence. He does not allege that

the evidence was insufficient to support his conviction of attempted assault. Nor does he contend that the jury was erroneously instructed as to the law. Rather, he contends that the jury should have been provided additional law: his counsel failed to request a jury instruction on unlawful display of a weapon, a lesser included offense.[4] In this context, the Washington Supreme Court found there was no reasonable probability that the outcome would have been different had the lesser included offense instruction been given.

We, in turn, must determine, through the lens of AEDPA, whether the Washington Supreme Court's decision was contrary to or an unreasonable application of *Strickland*. The majority does not hold that the state court decision was contrary to *Strickland.* Rather, the majority holds that the Washington Supreme Court's decision was an unreasonable application of *Strickland*. Maj. Op. 4–5. Even if this were a close issue, Supreme Court authority compels us to defer to the state court decision. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). When evaluating a state court's application of federal law, the Supreme Court instructs:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or [] could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

---

[4] As discussed in Part III, a jury instruction for unlawful display of a weapon would have been Crace's second jury instruction on a lesser included offense, as the jury was already instructed on attempted assault.

inconsistent with the holding in a prior decision of this Court.

*Harrington*, 562 U.S. at 102; *id.* at 103 ("[T]he state court's ruling on the claim . . . [must be] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The Washington Supreme Court's decision is not objectively unreasonable. As the majority notes, the Washington Supreme Court relied on its previous decision in *State v. Grier*, 246 P.3d 1206 (Wash. 2011) (en banc), *cert. denied*, 135 S. Ct. 153 (2014). *Grier* interpreted *Strickland* as providing that when analyzing prejudice a reviewing court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 1272 (quoting *Strickland*, 466 U.S. at 694). In other words, *Grier* held that because the jury had returned a guilty verdict, the court was required to presume the jury had found each of the elements of second degree murder had been proven beyond a reasonable doubt. *Id.* at 1273.

*Grier* noted that *Strickland*'s holding that jurors are presumed to follow the law is in tension with *Keeble v. United States*, 412 U.S. 205 (1973), which recognized that jurors may disregard the law. *Grier*, 246 P.3d at 1272–73. At issue in *Keeble* was whether an Indian prosecuted under the Major Crimes Act was entitled to a jury instruction on a lesser included offense when that lesser offense was not one of the crimes enumerated in the Act. 412 U.S. at 205–06. The government argued that the Act prohibited inclusion of a lesser included offense instruction and also suggested that

the defendant could actually benefit from the exclusion of a lesser included offense instruction, as the omission might result in acquittal. *Id.* at 209, 212–13. The Court, however, held that the defendant was entitled to the lesser included offense notwithstanding its omission in the Act noting:

> True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the

> defendant of simple assault—could not have
> resulted in a different verdict.

*Id.* at 212–13.

Thus, the Washington Supreme Court could reasonably find some tension in the Supreme Court guidance. *Strickland* holds that a court is to assume that the jury follows the law and, therefore, that juries only convict defendants if they find all elements of a crime beyond a reasonable doubt, while *Keeble* instructs that a defendant should not be exposed to the substantial risk that a "jury's practice will diverge from theory" and "resolve its doubts in favor of conviction" where the only other option is acquittal. *Keeble*, 412 U.S. at 212–13.

*Grier* resolved the tension between *Strickland* and *Keeble* in favor of *Strickland*, the more recent Supreme Court opinion. The Washington Supreme Court held that "*Keeble* is inapposite in the context of ineffective assistance of counsel" and "skews the *Strickland* standard" that presumes jurors follow the law. *Grier*, 246 P.3d at 1273. The court explained that the proposed instruction would have directed the jury not to consider a lesser included offense if it was convinced that the defendant was guilty of the greater offense. *Id.* at 1272–73. Thus, because the jury returned a guilty verdict on the greater offense of second degree murder, a proposed instruction on manslaughter would not have changed the result: Grier was not prejudiced. *Id.* at 1272–74. Applying *Grier*'s holding here, the Washington Supreme Court held that Crace had failed to demonstrate any prejudice from his counsel's failure to request a second lesser included instruction on unlawful display of a weapon in light of his

conviction of the greater offense, attempted assault. *In re Crace*, 280 P.3d at 1109.**[5]**

Similar positions have been espoused by the Supreme Court of Florida in *Sanders v. State*, 946 So. 2d 953 (Fla. 2006), *reh'g denied*, and by Judge Wilson of the Supreme Court of Missouri, albeit in a dissenting opinion, in *McNeal v. State*, 412 S.W.3d 886 (Mo. 2013) (en banc), *cert. denied* 134 S. Ct. 2292 (May 19, 2014).**[6]** In *Sanders*, the Florida Supreme Court explained that "any finding of prejudice

---

**[5]** *Strickland* informs us that if the petitioner challenges the sufficiency of the evidence, then jurors are no longer presumed to follow the law. 466 U.S. at 694. Although Crace challenged the sufficiency of evidence on direct appeal, he did not renew that argument in his habeas petitions. Additionally, no direct evidence suggests that the jury did not follow the law here.

**[6]** Judge Wilson ably explained in his dissent in *McNeal*:

> Because McNeal's jury found him guilty of burglary . . . there are only two ways to conclude that this lesser-included offense instruction likely would have changed the outcome . . . . They are: (1) that the jury did not believe the evidence was sufficient to prove McNeal guilty of burglary beyond a reasonable doubt but, because it was placed in an all-or-nothing position by the absence of the trespass instruction, the jury improperly convicted McNeal despite its oath and the court's instructions, or (2) that the jury did believe the evidence was sufficient to prove McNeal guilty of burglary beyond a reasonable doubt but, if it had been given the lesser-included offense instruction, the jury would have improperly ignored the evidence (as well as its oath) and convicted McNeal of the lesser offense as an act of leniency, grace, or other form of nullification.

*McNeal*, 412 S.W.3d at 895 (Wilson, J. dissenting).

resulting from defense counsel's failure to request an instruction on lesser-included offenses necessarily would be based on a faulty premise" that, "if given the choice, a jury would violate its oath, disregard the law, and ignore the trial court's instructions." *Sanders*, 946 So. 2d at 959. Because *Strickland* prohibits this type of speculation, the court held that the defendant was not prejudiced by a refusal to give an instruction of a lesser included offense.[7]

Our case presents a similar situation. Crace's jury found him guilty of attempted assault. The only way a lesser included instruction for unlawful display of a weapon could have changed the outcome is if the jury improperly convicted him of attempted assault or if the jury would have convicted him of unlawful display of a weapon as an act of "leniency, grace, or other form of nullification." *See McNeal*, 412 S.W.3d at 895 (Wilson, J., dissenting).

The majority and the Third Circuit disagree with the approach taken by the Washington Supreme Court, the Florida Supreme Court, and Judge Wilson in Missouri. *See* Maj. Op. and *Breakiron v. Horn*, 642 F.3d 126 (3d Cir. 2011). But this only illustrates that fairminded jurists disagree on whether counsel's failure to request a lesser included offense instruction prejudices the defendant. Therefore, the majority has not shown that the Washington Supreme Court's ruling "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Davis*, 135 S. Ct.

---

[7] The Eleventh Circuit, in an unpublished decision, has held that the Florida Supreme Court's reasoning in *Sanders* was not an unreasonable application of *Strickland*. *Santiago v. Sec'y, Fla. Dept. of Corr.*, 472 F. App'x 888, 889 (11th Cir. 2012).

at 2199 (quoting *Harrington*, 562 U.S. at 103). Far from it: fairminded jurists can and do disagree as to whether the failure to request an instruction on a lesser included offense can be prejudicial when the jury convicts on the greater offense and there is no question as to the sufficiency of the evidence.[8]  As the Supreme Court has not reconciled the statements in *Strickland* and *Keeble*, it is not objectively unreasonable for the Washington Supreme Court to read *Strickland* as limiting *Keeble*.[9]  *See Harrington*, 562 U.S. at

---

[8] A preliminary count reveals that judges who have considered this issue—whether the failure to request an instruction on a lesser included offense can be prejudicial when the jury convicts on the greater offense—are equally divided.  At least 16 judges would find that the petitioner has not shown a reasonable probability that but for counsel's failure to request a lesser included offense instruction, the outcome of the proceeding would have been different.  *See* discussion *infra*; *In re Crace*, 280 P.3d at 1109–10 (seven judges in the majority); *In re Crace*, 236 P.3d at 933 (one judge dissenting); *Sanders*, 847 So. 2d at 960 (five justices concurring in opinion); *McNeal*, 412 S.W.3d at 893 (two judges dissenting).  But at least 16 others judges would.  *See* Maj. Op.; *Crace v. Herzog*, No. C12-5672 RBL/KLS, 2013 WL 3338498 (W.D. Wash. July 2, 2013) (district judge adopting magistrate judge's recommendation of grant of habeas relief); *In re Crace*, 280 P.3d. at 1110 (two Washington Supreme Court justices dissenting); *In re Crace*, 236 P.3d at 933 (two Washington appellate judges in majority); *Breakiron*, 642 F.3d at 128 (three circuit judges); *McNeal*, 412 S.W. 3d at 893 (five judges in majority).  Although not dispositive, the fact that so many other conscientious jurists have reached the same conclusion as the Washington Supreme Court certainly bears some relevance as to whether the state court's reasoning was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.

[9] A somewhat similar, and hence instructive, situation confronted the Supreme Court in *Lockyer v. Andrade*, 538 U.S. 63 (2003), in which the Court held that it had not established a "clear or consistent path for courts to follow" in determining "whether a particular sentence for a term of

105 ("The *Strickland* standard is a general one, so the range of reasonable applications is substantial.").

The majority nonetheless suggests that the Washington Supreme Court's decision was unreasonable because it converted *Strickland*'s prejudice inquiry into a sufficiency-of-the-evidence question prescribed by *Jackson v. Virginia*, 443 U.S. 307 (1979). Maj. Op. 17. The majority's conclusion is based on the following text in the state court's opinion:

> Assuming without deciding that counsel was deficient, consistent with Grier, we cannot say in all reasonable probability that counsel's error—failure to seek the lesser included offense—contributed to Crace's conviction on attempted second degree assault. There was sufficient evidence from which a juror could conclude Crace committed this offense. Evidence established he intended to cause Deputy Hardesty fear and apprehension. RP at 143–45 (cross-examination of Crace suggesting that he rushed the deputy thinking Hardesty might be an assailant); RP at 208–17 (testimony from State's psychologist suggesting Crace was not only capable of forming intent, but was also malingering, which might have undermined his credibility with the jury). Indeed, if failing to request the

years can violate the Eighth Amendment." *Id.* at 72. Because the precise contours of the Eighth Amendment's disproportionality principle were unclear, it was not objectively unreasonable for the California Court of Appeals to conclude that a three strikes sentence of 50 years to life for petty theft was not grossly disproportionate. *Id.* at 70, 75–77.

lesser-included instruction was deficient
performance, it occurred during an otherwise
strategic and tactically driven presentation by
counsel.   In light of the presumptions we
recognized in *Grier*, it would be difficult to
show prejudice in such a context, and Crace
has failed to do so here.

*In re Crace*, 280 P.3d at 1109.

There is no dispute that the Washington court recited the
correct *Strickland* standard at length in the preceding sections
of the opinion.  *See, e.g.*, *id.* at 1106 ("*Strickland* arrived at a
measure of prejudice that requires the defendant to show a
'reasonable probability' that but for counsel's deficient
representation, the outcome of the proceeding would have
been different."); *id.* at 1107 ("*Strickland'*s test is ultimately
concerned with 'the fundamental fairness of the proceeding
whose result is being challenged.'" (quoting *Strickland*,
466 U.S. at 696)); *id.* ("'In every case the court should be
concerned with whether, despite the strong presumption of
reliability, the result of the particular proceeding is unreliable
because of a breakdown in the adversarial process that our
system counts on to produce just results.'" (quoting
*Strickland*, 466 U.S. at 696)).

In its application of *Strickland*, the Washington Supreme
Court considered the sufficiency of the evidence against
Crace for attempted assault and concluded it was presumptive
evidence that Crace could not show a reasonable probability
of a different outcome if the jury had been instructed on the
lesser included offense of unlawful display of a weapon.  The
court's review of the sufficiency of the evidence supporting
Crace's conviction is not inconsistent with *Strickland*; to the

contrary, the court would have been remiss if it did not evaluate the sufficiency of the evidence supporting the verdict. *See Strickland*, 466 U.S. at 695–96 ("[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Thus, the Washington court's consideration of the sufficiency of the evidence is not enough to overcome the presumption that the court knew and followed the applicable clearly established law. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (holding that a "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law"); *see also Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam); *Poyson v. Ryan*, 743 F.3d 1185, 1198–99 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 2302 (2014).; *Lopez v. Schriro*, 491 F.3d 1029, 1037 (9th Cir. 2007), *cert denied*, 128 S. Ct. 1227 (2008). Accordingly, I would hold the court's decision was a reasonable application of *Strickland*.[10]

---

[10] The majority's concern that the Washington Supreme Court created a categorical rule such that no prejudice can ever be found for failing to request a lesser included offense instruction if there is sufficient evidence of the greater offense is overstated. *See* Maj. Op. 18. First, the court's language disclaims a categorical rule: "in light of the presumptions we recognized in *Grier*, *it would be difficult* to show prejudice in such a context, and *Crace has failed to do so here*." *In re Crace*, 280 P.3d at 1109 (emphasis added). Second, even if the Washington Supreme Court was creating a categorical rule, such a rule may be sound in these limited circumstances in which the only error Crace asserts is that his counsel did not request a jury instruction on a second lesser included offense when the jury was already instructed as to one lesser included offense. *See also infra* Part III.

As Supreme Court authority compels deference to the decision of the Washington Supreme Court, I would reverse the district court's grant of habeas relief.[11]

### III

The reasonableness of the Washington Supreme Court's perspective is buttressed by the fact that the jury was presented with one lesser included offense instruction. This enhances the verdict's reliability and compels the conclusion that the Washington Supreme Court decision was not unreasonable. *See Beck v. Alabama*, 447 U.S. 625, 636 (1980); *Schad v. Arizona*, 501 U.S. 624, 645–47 (1991). *Beck* concerned an Alabama statute that precluded giving the jury any lesser included offense instructions in capital cases. *Id.* at 628–29, n.3. The Court invalidated the statute, holding that due process entitles a defendant to a lesser included offense instruction in a capital case to protect against the risk of an unwarranted conviction. *Id.* at 637 ("Such a risk cannot be tolerated in a case in which the defendant's life is at stake.").

The Court subsequently limited *Beck*'s reach in *Schad*, holding that, even in a capital case, a defendant is not entitled to every lesser included offense jury instruction supported by the evidence. 501 U.S. at 645–47. In *Schad*, the habeas

---

[11] To be sure, some of my colleagues disagree with the Court's interpretation of AEDPA. *See, e.g.*, Stephen R. Reinhardt, The Demise of Habeas Corpus and the Rise of Qualified Immunity: The Court's Ever Increasing Limitations on the Development and Enforcement of Constitutional Rights and Some Particularly Unfortunate Consequences, 113 Mich. L. Rev. 1219 (2015). But even those colleagues concede that we are "bound to follow [the Court's] rulings . . . because the system of law that we so admire and respect contains a hierarchy in which the Supreme Court rests at the top." *Id.* at 1254.

petitioner was charged with and convicted of first degree murder and was sentenced to death. *Id.* at 629. Although the jury was instructed on a lesser included offense of second degree murder, the petitioner argued that he was entitled to a jury instruction for a second lesser included offense, robbery. *Id.* at 629, 645. The Court rejected this argument, explaining that the defendant was not faced with an "all-or-nothing" situation where the jury had to convict him of a capital crime or acquit him.

> The goal of the *Beck* rule, in other words, is to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence. This central concern of *Beck* simply is not implicated in the present case, for petitioner's jury was not faced with an all-or-nothing choice between the offense of conviction (capital murder) and innocence.

*Id.* at 646–47 (internal citations and quotation marks omitted). Schad's theory of defense at trial was that he merely stole the victim's property but did not murder him. He complained that refusing a lesser included instruction for robbery or theft deprived the jurors of the "opportunity to return a verdict in conformity with their reasonable view of the evidence." *Id.* at 647. The Court rejected this argument:

> [T]he fact that the jury's "third option" was second-degree murder rather than robbery does not diminish the reliability of the jury's capital murder verdict. To accept the contention advanced by petitioner and the dissent, we would have to assume that a jury

>unconvinced that petitioner was guilty of either capital or second-degree murder, but loath to acquit him completely (because it was convinced he was guilty of robbery), might choose capital murder rather than second-degree murder as its means of keeping him off the streets. Because we can see no basis to assume such irrationality, we are satisfied that the second-degree murder instruction in this case sufficed to ensure the verdict's reliability.

*Id.* Thus, following *Schad*, once one lesser included offense instruction is given, the risk of a compromise verdict is diminished. *See Murtishaw v. Woodford*, 255 F.3d 926, 955 (9th Cir. 2001) ("*Beck* does not require trial courts to provide sua sponte instructions on each theory that could justify a lesser included offense. Rather, it merely requires courts to provide instructions on the lesser included offenses, thus preventing the State from forcing juries to make an 'all or nothing' choice between acquittal and capital murder."); *cf. People v. Horning*, 102 P.3d 228, 252 (Cal. 2004) ("'*Beck*'s principles [are] satisfied if the jury [i]s provided some noncapital third option between the capital charge and acquittal.'") (quoting *People v. Sakarias*, 995 P.2d 152 (Cal. 2000)).

*Keeble*, *Beck*, and *Schad* support the conclusion that Crace's conviction for attempted assault was not a compromise verdict. Crace's jury was not presented with an "all-or-nothing choice" between conviction and innocence. Rather, Crace's jury was instructed on a number of potential verdicts, including the greater offense of assault and the lesser included offense of attempted assault, as well as

malicious mischief and trespass. The jury's mixed verdict, acquitting Crace of assault, but finding him guilty of attempted assault, mischief, and trespass suggests that it had no misgivings about acquitting Crace when it deemed appropriate to do so.[12]

Moreover, Crace's counsel's failure to request a second lesser included offense instruction for unlawful display of a weapon was not prejudicial because the jury was not presented with the all-or-nothing choice contemplated in *Keeble* and *Beck*. As the Supreme Court held in *Schad*, where a jury has been instructed on both a greater and lesser included offense, the conviction is reliable. 501 U.S. at 647–48.[13] Reliability is the touchstone of *Strickland*'s prejudice analysis. *Williams v. Taylor*, 529 U.S. 362, 393 n. 17 (2000) (*Strickland*'s prejudice component "focuses on the question [of] whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"); *cf. Kyles v. Whitley*, 514 U.S. 419, 434 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a

---

[12] Indeed, the jury's inability to reach a verdict on assault may be the result of the jury rejecting Crace's defense that he lacked the requisite intent required for both assault and attempted assault, and instead determining that the government had not shown the required actus reus for assault.

[13] The majority dismisses *Schad* as a due process case that did not squarely address ineffective assistance of counsel, but neither did *Keeble*. In any event, the point is that *Schad* and *Keeble* shed light on the question of whether the absence of a second lesser included offense instruction renders Crace's verdict unreliable. While the majority concludes to the contrary, I would defer to the Washington Supreme Court's reconciliation of *Keeble* and *Strickland* in light of *Beck* and *Schad*.

fair trial, understood as a trial resulting in a verdict worthy of confidence."). Thus, there is no basis under *Strickland* to conclude that if Crace's counsel had requested another lesser included offense instruction, the jury would have returned a different verdict.

Even if I could agree that defense counsel's failure to request a jury instruction for *one* lesser included offense created a reasonable probability that the outcome could be different, I cannot agree with the majority that defense counsel's failure to request a *second* lesser included offense instruction created a reasonable probability that the outcome would have been different. Taken to its logical conclusion, defense counsel would be obligated to request all potentially relevant lesser included offense instructions to avoid a compromise verdict. Therefore, I would hold that Crace has not shown that the Washington Supreme Court decision was unreasonable.

## IV

The majority's reluctance to accept that counsel's failure to request an instruction on the lesser included offense of unlawful display of a weapon may reasonably be considered harmless may stem from the stark fact that attempted assault is a felony while unlawful display of a weapon is a misdemeanor and, thus, not a "strike" under Washington's three strikes law. But the jury did not know the sentencing consequences of its verdict on the various charges. Nor is there any suggestion that if the jury had been provided with an instruction for the lesser included offense of unlawful display of a weapon that the jurors would have understood

that charge to be a misdemeanor.[14] Washington law prohibits a jury from considering matters related to sentencing in non-capital cases. *See State v. Hicks*, 181 P.3d 831, 836 (Wash. 2008) (en banc) ("[W]here the jury has no sentencing function, it should not be informed on matters that relate only to sentencing."); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."). In accordance with these principles, Crace's jury was instructed:

> You have nothing whatever to do with any punishment that might be imposed in case of a violation of the law. The fact that punishment may follow conviction cannot be considered by you except insofar as it may tend to make you careful.

> You are officers of the court and must act impartially and with an earnest desire to determine and declare the proper verdict. Throughout your deliberations you will permit neither sympathy nor prejudice to influence your verdict.[15]

---

[14] Apparently one juror on Crace's jury wrote an article in a local newspaper about the experience, and said that she "came to consider the possibility that Mr. Crace was facing a third strike" because she "had read about the law and understood the process." She, however, "did not discuss [her third strike theory] with anyone else." *In re Crace*, 236 P.3d at 922.

[15] There is no indication that Crace objected to this instruction.

Thus, the fact that Crace's conviction for attempted assault was a felony that triggered Washington's three strikes law neither undermines the jury's verdict nor provides any support for the argument that the verdict would have been different if the jury was been instructed on another lesser included offense that was a misdemeanor.

* * *

The wisdom of Washington's three strikes law is not before us, nor are we called upon to determine the correctness of the Washington Supreme Court's interpretation of *Strickland* and *Keeble*. Rather, pursuant to AEDPA, we are limited to inquiring whether the Washington Supreme Court's decision is unreasonable. *Davis*, 2015 WL 2473373, at *9. I would find the Washington court's interpretation of U.S. Supreme Court opinions neither contrary to nor an unreasonable application of clearly established law. Fairminded jurists may conclude that the jury's conviction of Crace on the lesser included offense of attempted assault on sufficient evidence renders his counsel's failure to seek an instruction on another lesser included offense harmless.

Accordingly, I respectfully dissent.